Botsford, J.
The plaintiff Robert Half International, Inc. (RHI) brings this action to enforce various non-competition and confidentiality provisions of an employment agreement against RHI’s former employee, the defendant Matthew Buoncontri. Presently before the court is RHI’s motion for a preliminary injunction against Buoncontri. For the reasons discussed below, the motion is allowed in part and denied in part.
Background
RHI is in the business of recruiting and placing permanent and temporary employees. It is a Delaware corporation with its principal place of business in California, but it transacts business in Massachusetts, other New England states, and numerous additional states throughout the country. It operates a number of divisions, and through them offers temporary and permanent personnel services in fields that include accounting and financial services, information technology, and office administration. It has an office in Boston, Massachusetts.
RHI hired the defendant Buoncontri in June 1997 at its Paramus, New Jersey, office as a staffing manager. In 1999, he was transferred to the Boston office as a staffing manager. In January of2000, Buoncontri became the division director of RHI’s Accountemps division in Boston, where he was responsible for a staff of sales persons and administrative assistants and spent, he says, 95 percent of his time dealing with managerial duties. In January 2001, he was promoted to be a production exclusive division director, and remained division director of the Accountemps’ Boston office. In January 2002, Buoncontri left that position and became the division director of RHI’s Boston Officeteam Health Care Group. This latter group specializes in administrative staffing in the health care *743 industry in a defined territory that includes Boston and several surrounding communities. According to RHI’s counsel, Buoncontri received an increase in compensation when he became the director of the Officeteam Health Care Group, a new venture (at least in Boston) for RHI.
On January 21, 2002, in the same time frame that Buoncontri assumed this new position, RHI had him sign an employment agreement (agreement) with confidentiality, non-competition and non-solicitation provisions. In particular, the agreement provides that with respect to so-called confidential information, Buoncontri as the employee was not to . . .
directly or indirectly, disclose, furnish or make accessible to any person, firm, corporation, or other entity, or make use of, any confidential information of any of the RHI Companies, including, without limitation, information with respect to the name, address, contact persons or requirements of any customer, client, applicant, candidate or employee of any of the RHI Companies . . . and information with respect to the procedures, advertising, finances, organization, personnel, plans, objectives or strategies of the RHI Companies . . .
(Agreement, ¶8.) These confidentiality provisions apply to the employee both during and after his employment, and have no end point.
As for non-competition and non-solicitation, the agreement includes three separate restrictions, one concerning the employee’s line of work following his “Termination Date,”[1] one prohibiting post-termination solicitation of RHI “customers,”[2] and the final one also barring solicitation of other employees. Thus, the agreement states in relevant part:
9. Restrictive Covenant... for a period of twelve (12) months after the Termination Date . . . Employee agrees that Employee shall not, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of, any Competitor [3] in any part of the area encompassed within a radius of fifty miles from any Applicable Office.[4]
10. Non-solicitation of Customers ... for a period of twelve (12) months after the Termination Date . . ., Employee agrees that Employee shall not, directs or indirectly, on behalf of any Competitor, Solicit[5] the bade or patronage of any Customer or perform services for any Customer. Such restriction on Soliciting or performing services shall apply regardless of whether or not any such Customer was previously a customer of Employee or whether or not such Customer was previously, or is at the time of Solicitation or the performance of services, a customer of any Competitor.
11. Non-solicitation of Other Employees ... for a period of twelve (12) months after the Termination Date Employee agrees that Employee shall not, directly or indirectly, Solicit any Other Employee to either leave the employ of the RHI Companies or to become connected in any way with any Competitor.
(Agreement ¶¶9-11.)
On October 29, 2002, Buoncontri told his supervisor that he was resigning from RHI, and he left the next day. Buoncontri states that RHI, through its personnel, offered to pay him for his notice period rather than have him work for two additional weeks, but has not done so. In mid-November, Buoncontri began working for Professional Staffing Group (PSG), a company that performs employment placement services in Boston, and is a direct competitor of RHI. Buoncontri further states that before he began his job at PSG, he told Paul Becker, his supervisor at RHI, what he planned to do, and Becker indicated he did not have any problem with the job. Buoncontri is now the branch manager of accounting and finance at PSG. He is responsible for placing accounting and finance professionals on a temporary basis. He says that “[a] large portion of my responsibilities involves dealing with candidates. Prior to joining PSG, I had not been involved in this type of role for two years.” (Buoncontri affidavit, ¶17.)
RHI states that on or about January 7, 2003, the senior staffing manager in its Accountemps division in Boston spoke with the human resources manager of OBI, one of the largest Accountemps clients, and was told by the manager that a Ryan Murphy from PSG had called to say he and an associate named “Matt” wanted to meet with the manager to talk about expanding PSG’s business with OBI. RHI alleges on information and belief that the “Matt” referred to is Buoncontri. RHI has not offered any other evidence suggesting any solicitation of RHI “customers” by Buoncontri. OBI is an existing client of PSG, and apparently has been since 2001. Buoncontri denies that he has contacted OBI himself or that he was scheduled to meet with anyone there.
RHI filed this action on January 21, 2003. It seeks a preliminary injunction barring Buoncontri from (1) owning managing, conbolling or being employed by any competitor of RHI within a 50-mile radius of RHI’s Boston office; (2) disclosing any proprietary or confidential information belonging to RHI; (3) contacting or soliciting business of RHI’s customers on behalf of himself or any other entity for twelve months; (4) contacting or soliciting business of RHI’s candidates on behalf of himself or any other entity for twelve months; and (5) soliciting any employee of RHI for twelve months. Buoncontri opposes the injunction.
Discussion
To prevail on its request for a preliminary injunction, RHI must show a strong likelihood of success on the merits of its claims, that it will suffer irreparable harm without the requested injunctive relief and that *744 its harm, without the injunction, outweighs any harm to Buoncontri from being enjoined. GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). See Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990).
1.Non-competition Covenant (Restrictive Covenant)
The agreement prohibits Buoncontri from working for any business that competes in the field of personnel staffing for one year and within a 50-mile radius of Boston.
Employee covenants not to compete generally are enforceable only to the extent they are necessary to protect the legitimate business interests of the employer. Novelty Bias Binding Co. v. Shevrin [342 Mass. 714, 716 (1961)]. Such legitimate business interests might include trade secrets, other confidential information, or the good will the employer has acquired through dealings with its customers. See All Stainless, Inc. v. Colby [364 Mass. 773, 779-80 (1974)]. Protection of the employer from ordinary competition, however, is not a legitimate business interest, and a covenant not to compete designed solely for that purpose will not be enforced. Richmond Bros., Inc. v. Westinghouse Broadcasting Co., Inc., 357 Mass. 106, 111 (1970).
Marine Contractors Co., Inc. v. Hurley, 365 Mass. 280, 287-88 (1974). Moreover, a non-competition agreement must be reasonable in geographical and temporal scope. See, e.g., Blackwell v. E.M. Helides, Jr., Inc., 368 Mass. 225, 228 (1975); All Stainless, Inc. v. Colby, 364 Mass. 773, 779-80 (1974).
RHI claims enforcement of the non-competition covenant is essential to protect its legitimate business interests, and particularly its reputation and relationships with its customers; these interests appear to fall in large part under the heading of goodwill. Goodwill is certainly a legitimate business interest that an employer is entitled to protect generally and specifically in relation to sales personnel — individuals dealing directly with the customers of the former employer in whole or in part. See, e.g., All Stainless, Inc. v. Colby, supra, 364 Mass. at 779-80. See also Kroeger v. Stop & Shop Cos., Inc. 13 Mass.App.Ct. 310, 316 (1982). I agree with RHI as well that a restriction against employment by a competitor for a period of one year and within a 50-mile radius of where the employee worked — here Boston — is also generally reasonable. See, e.g., Blackwell v. E.M Helides, Jr., Inc., supra, 368 Mass. at 228.
In this case, however, RHI has not shown on the present record that the balance of harms here — the claimed harm arising from non-enforcement of the non-competition portion of the agreement versus the harm to Buoncontri if the non-competition portion is imposed and bars Buoncontri from working for PSG— weighs in its favor. See Packaging Indus. Group, Inc. v. Cheney, supra, 380 Mass. at 617, 620-21. See also Speechworks Internal’l, Inc. v. Cote, Suffolk Superior Court CA. No. 02-4411 BLS (Memorandum and Order on Motion for Preliminary Injunction, October 11, 2002, slip op. at 7-8). Putting the question of “candidates” to one side — it is discussed below — there has been no showing that Buoncontri is disclosing or has disclosed any confidential information concerning RHI’s customers, accounts, marketing plans, or even information concerning any of its other business practices to PSG. Buoncontri himself states he left all lists and information concerning clients and candidates on his desk at RHI when he departed, and nothing in the record contradicts the statement. While RHI focuses on its customer OBI, the fact is that OBI was a customer of PSG’s as well before Buoncontri began working there. And although RHI states that the human resources manager from OBI apparently said the name “Matt” was used by a PSG representative— there is no affidavit from the OBI human resources manager herself — if I accept that this is so and assume the “Matt” is Buoncontri, I still find no evidence to contradict Buoncontri’s statement in his affidavit that he neither contacted OBI himself nor was aware that his name was used. There is also an absence of evidence that Buoncontri has contacted any other customers of RHI.
On the other side of the coin, enforcement of the non-competition agreement would cost Buoncontri his job, because PSG is unquestionably a “competitor” of RHI. That is a result with significant hardship for Buoncontri, even if permitted by the terms of the agreement.[6] The agreement contains a separate bar against solicitation of RHI “customers.” If this is enforced in reasonable measure, RHI’s legitimate interests will be protected. In the circumstances, the balance of harms tips decidedly in favor of Buoncontri in relation to enforcement vel non of the non-competition (or restrictive) covenant in the agreement.
2.Disclosure of Confidential Information
RHI is entitled under the agreement to the protection of its confidential customer, financial and marketing information. Again deferring consideration of information about candidates, there is no evidence that Buoncontri has generally disclosed confidential information about RHI customers or customer lists, or confidential sales, marketing, or other information to PSG in violation of his contractual obligation not to do so. Accordingly, no injunction on this subject will enter at the present time. Clearly, however, if discovery or future events should indicate that Buoncontri has violated or is violating Paragraph 8 of the agreement, RHI will be entitled to injunctive relief.
3.Solicitation of Customers
Buoncontri is obligated by the agreement not to solicit any “customer” or perform services for any “customer,” of RHI, whether or not the customer was *745 a customer of Buoncontri himself. The prohibition against solicitation of customers of RHI for a period of one year is designed to protect RHI’s legitimate interest in its client relationships and good will. In relation to Buoncontri, the term “customer” is defined to mean any person or business for whom or for which the Boston office of RHI performed services within twelve months of October 30, 2002, Buoncontri’s termination date. (See agreement, ¶7, “Applicable Office,” and “Customer.”) This prohibition is reasonable in relation to Boston RHI customers with whom Buoncontri himself dealt and also in relation to other Boston RHI customers of whom Buoncontri was (or is) aware, even though he may not have dealt with them personally himself. See, e.g., PC-Plus Techs., Inc. v. Gokani, No. 990658, 1999 Mass.Super. LEXIS 221, at *2-4, 10 Mass. L. Rptr. 175. However, it does not seem reasonable to hold Buoncontri responsible for not soliciting business from or dealing with customers of RHI of whom or which he has no knowledge — certainly not without a disclosure from RHI of its list of customers who were customers of the Boston office from October 30, 2001 to October 30, 2002.
4. Solicitation of Candidates
RHI argues Buoncontri should be enjoined from soliciting business of any RHI “candidates” for a period of twelve months. The agreement does not define the term “candidate,” and further contains no provision expressly dealing with an employee’s post-termination obligations in relation to candidates.[7] RHI does not explain what in the agreement entitles it to injunctive relief against Buoncontri’s solicitation of candidates. It may be, however, that RHI is depending on the provisions of Paragraph 8, which directs that Buoncontri shall not “make use of... any confidential information . . . including . . . information with respect to the name, address, contact persons or requirements of any . . . candidate ... of any of the RHI Companies ...” I accept that personal information and contact information about candidates, including specific information about candidates’ job requirements, may well qualify as confidential information of RHI entitled to protection. Any prohibition against Buoncontri’s use or disclosure of this information, however — for purposes of soliciting their business or otherwise — by definition is restricted to those candidates of whom he had knowledge and resulting information while employed at RHI.
There is some possibility that Buoncontri is currently working with candidates who were candidates of RHI at the Boston office, although not candidates of the Officeteam Health Care Group. (See Buoncontri affidavit, ¶¶18, 19.) If these candidates came to PSG independently of Buoncontri and if he is not using any confidential information of RHI’s in working with them, this would not violate the agreement. However, if Buoncontri has used any confidential information concerning the identify, job requirements, etc. of these candidates that he learned while employed at RHI in order to bring them to PSG, RHI is entitled to an injunciton against such use.
5. Solicitation of Employees
The agreement does prohibit the solicitation of employees of RHI for a year after termination. There is, however, no evidence that Buoncontri has solicited any employees of RHI. No injunction with respect to Paragraph 11 of the agreement is appropriate at this time.
ORDER
For the foregoing reasons, it is ordered as follows:
1. The defendant Matthew Buoncontri is preliminarily enjoined until October 30, 2003, from directly or indirectly soliciting the trade or patronage of or performing any services for any person, firm, entity, business or organization that is a “Customer” (as that term is defined in the defendant’s employment agreement) of the plaintiff RHI’s Boston office (a) with whom the defendant had any contact during the last twelve months of his employment with RHI, or (b) whom the defendant is aware was a “Customer” of RHI during any part of the last twelve months of the defendant’s employment with RHI.
2. The defendant is further preliminarily enjoined from directly or indirectly disclosing, furnishing, making accessible to any other person, or making use of, any confidential information of RHI’s that relates to any candidate of any of the RHI companies, including the name, address, contact persons or employment requirements of that candidate.

The term “Termination Date” is defined in the agreement as “the date on which Employee’s employment with the RHI Companies is terminated by either Employer or Employee.” (Agreement, ¶7.)

“Customer” is defined in the agreement as “any person, firm, entity, business or organization for whom any of the Applicable Offices [see note 4 below] performs or has performed services in the course of its business within the twelve months preceding the Termination Date.” (Agreement, ¶7.)

The term “Competitor” is defined in the agreement to mean “any executive recruiting firm, employment agency, temporary personnel service business or other staffing services business engaged in whole or in part in any business conducted by the RHI Companies . . .” (Agreement, ¶7.)

The term “Applicable Office” means “any office of the RHI Companies in which Employee has worked, or over which Employee has exercised any form of direct or indirect supervisorial authority, during the one year period preceding the Termination Date.” (Agreement, ¶7.)

“ ‘Solicit’ means soliciting, inducing, attempting to induce or assisting any other person, firm, entity, business or organization in any such solicitation, inducement or attempted inducement, in all cases regardless of whether the initial contact was by Employee, an Other Employee, or any other person, firm, entity, business or organization . . .” (Agreement, ¶7.)

It is true that Buoncontri signed the agreement, and I disagree with him that it lacked consideration, but it does appear to have been a contract that was the product of *746 “unequal bargaining power” that deserves particular scrutiny. Sentry Ins. v. Firnstein, 14 Mass.App.Ct. 706, 707 (1982).

It seems reasonably clear, from a reading of (a) the definition of the word “Customer” in ¶7 of the Agreement and (b) the Agreement’s use of the words “candidate” and “Customer” separately (see, e.g., ¶8), that a candidate is not included within the definition of “Customer,” and therefore Paragraph 10 of the agreement, prohibiting non-solicitation of customers, is not applicable to candidates.